IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| IN RE: | : | CIVIL ACTION NOS. 18-CV-4670 |
| KEYSEAN L. KEYES, | : | 18-CV-4671 |
| Plaintiff. | : | 18-CV-4692 |
| | : | 18-CV-4693 |
| | : | 18-CV-4709 |
| | : | 18-CV-4714 |

FILED
NOV 02 2018
KATE BARKMAN, Clerk
By_____Dep. Clerk

MEMORANDUM

RUFE, J.                                          NOVEMBER 2nd, 2018

Plaintiff Keysean L. Keyes, a prolific *pro se* filer who has been enjoined from filing lawsuits on an *in forma pauperis* basis in the Eastern District of New York, has filed ten lawsuits in this District over the course of three days. Keyes' lawsuits predominately concern a criminal proceeding brought against her in Nassau County, New York, a bench warrant issued for her arrest in connection with that proceeding, and her desire to "transfer" her criminal case to this Court. Six of those lawsuits—Civil Action Numbers 18-4670, 18-4671, 18-4692, 18-4693, 18-4709, and 18-4714—have been assigned to the undersigned.

Keyes has moved to proceed *in forma pauperis* in each of those cases. For the following reasons, the Court will grant Keyes leave to proceed *in forma pauperis* and dismiss her Complaints. Keyes will also be directed to show cause as to why she should not be subject to a prefiling injunction as set forth in more detail below.

## I. FACTS AND PROCEDURAL HISTORY[1]

### A. Keyes' Filing History in Other Districts

A search of PACER reflects that since May of 2015, Keyes has filed sixty-five cases in

---

[1] The following facts are taken from public court dockets and Keyes' complaints.

1

ENT'D NOV 05 2018

the Eastern District of New York and three cases in the District of Connecticut. Many of those lawsuits appear to have stemmed from state criminal proceedings initiated against her. As a result of Keyes' litigation efforts while incarcerated, she has already acquired three strikes for purposes of 28 U.S.C. § 1915(g). *See Keyes v. Quinn*, No. 17-CV-6429 (JMA), 2017 WL 6570869, at *1 n.2 (E.D.N.Y. Dec. 22, 2017) ("She has already had at least three *in forma pauperis* complaints that were filed while she was incarcerated *sua sponte* dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1)."). During one period of less than a month, Keyes filed fourteen cases in the Eastern District of New York. *Id.*

On November 9, 2017, the Honorable Joan M. Azrack of the Eastern District of New York issued an order in several of Keyes' cases, directing Keyes to show cause "why an order should not be entered barring her from filing any new complaint relating to her underlying criminal case and any of the subjects raised in" twenty-three cases she filed in that District. *Id.* at *1. Keyes did not respond and was accordingly "enjoined from filing any new action in [the Eastern District of New York] . . . relating to her underlying criminal case and any of the subjects raised in [those] Complaints without first seeking leave of Court." *Id.* Keyes "was also warned that the continued submission of frivolous civil actions may result in the imposition of additional sanctions, including monetary penalties, upon notice and an opportunity to be heard." *Id.* at *2.

On December 22, 2017, Judge Azrack addressed an additional seven cases filed by Keyes that were not addressed by the Judge's prior order. Judge Azrack observed that Keyes' complaints were "incomprehensible, incoherent, frivolous, and largely repetitive of prior complaints," and that, among other things, Keyes continued to sue state judges who presided

2

over her criminal matters and attorneys assigned to represent her in those cases. *Id.* Additionally, "[l]ike her other complaints, [Keyes] allege[d] that she, as a 'black woman', is a victim because the defendants 'hate [] black people.'" *Id.*

Judge Azrack granted Keyes leave to proceed *in forma pauperis* and dismissed her cases, concluding that they were factually and legally frivolous. *Id.* at *3. Judge Azrack also directed Keyes to show cause why she should not be subject, in light of her abusive litigation history, to a prefiling injunction barring her from filing any new *in forma pauperis* complaint regardless of the subject matter without first obtaining leave of court. *Id.* at *4. Judge Azrack also enjoined Keyes from filing any new *in forma pauperis* complaint for thirty days, noting that "[t]his temporary 30-day injunction is necessary to ease the substantial burden placed on the Court and court staff by the continuous stream of baseless and repetitive complaints filed by [Keyes]."[2] *Id.* (footnote omitted).

Keyes was also warned that, "should she file another incoherent, frivolous action" the court would consider imposing sanctions on her. *Id.* Judge Azrack further explained why Keyes' behavior justified the imposition of additional restrictions:

> Given that [Keyes] is disruptive on her lengthy and frequent visits to the Court and has now named as defendants each employee in the Clerk's Office who has assisted her, including the Clerk's Office Manager, and the Long Island Courthouse's *Pro Se* Office staff members, the Court may also enjoin [Keyes] from personally filing any papers at the Court and may require that all future submission from [Keyes] be sent to the Court through the mail. While the Court is hesitant to limit access to the courthouse door to [Keyes], the assistance she needs and has sought is not to be found here and her abuse of judicial resources is clearly excessive.

---

[2] The court specified that the injunction would not preclude Keyes from filing a *habeas* petition.

3

*Id.* (footnote omitted). Judge Azrack also observed that Keyes "arrive[d] at the Court when it open[ed] and stay[ed] in the Clerk's Office all day," was "verbally abusive with Court staff," disrupted "the overall office operations by constantly asking for the time or for additional blank sheets of paper or court forms," and "interrupted Court staff on several occasions when they [were] assisting other litigants." *Id.* at *4 n.6.

On March 20, 2018, Keyes was finally enjoined from filing additional *in forma pauperis* complaints in the Eastern District of New York without prior approval. *See Keyes v. Quinn*, Civ. A. No. 17-6429 (E.D.N.Y) (ECF No. 8 at 3). Additionally, as Keyes had returned to the court on January 25, 2018 and was "rude, belligerent, and argumentative with each Court employee she encountered," the Court also prohibited her from personally filing any papers at court, instead limiting Keyes to filing by mail. *Id.* (ECF No. 8 at 4).

## B. Keyes' Criminal Proceeding in Nassau County

It appears that Keyes was arrested in Nassau County, New York on or about April 26, 2018, and criminally charged with disorderly conduct, Case Number CR-014288-18NA. It also appears that Keyes was given an attorney in connection with that case. The public docket suggests that she was due for an appearance in state court in Nassau County on October 31, 2018 in connection with the charge. On October 30, 2018, Keyes arrived in the Eastern District of Pennsylvania and began filing lawsuits in this Court.

## C. Keyes' Current Complaints

Keyes filed several lawsuits in this Court over a three-day period, during which she spent almost the entire day in the Clerk's Office. Keyes' filing are often-times difficult to read because of her handwriting. They are also somewhat difficult to understand. However, the

4

Court has done its best to ascertain the gist of Keyes' allegations to determine whether any of her lawsuits have merit.

### 1. Keyes Files Three Lawsuits on October 30, 2018

On October 30, 2018, Keyes filed three lawsuits. Her first case, *Keyes v. Wilson*, Civ. A. No. 18-4670 (E.D. Pa.) named as Defendants Stanley William Wilson, Valerie Wilson, Shawnette Wilson, Wilbert Wilson, and Tysleem Wilson. Keyes alleged that Stanley Wilson tried to run her over in the Bronx and committed other crimes against her. Keyes indicated on the form complaint that she seeks to invoke the Court's federal question jurisdiction based on "hate crime" and "violence." (Civ. A. No. 18-4670, Compl. ECF No. 2, at 5.)[3] Keyes also filed an "emergency" motion for an attorney, claiming that she feared for her life. (*Id.* ECF No. 3.)

Keyes' second case, *Keyes v. Groder*, Civ. A. No. 18-4671 (E.D. Pa.), names as Defendants Jeffrey Groder, Judge Harris, Police Officer O'Connell, the "Warrant Commissioner PA," and a "Warrant Commissioner Officer." It appears that Groder is an attorney assigned to represent Keyes in her criminal matters, and that Judge Harris presided over Keyes' most recent criminal matter. The Complaint in Civil Action Number 18-4671 references Keyes' criminal proceeding in Nassau County, Case Number CR-014288-18NA.

Keyes appears to be alleging that she should not have been charged with disorderly conduct and that the state court is "dragging the case on instead of dropping the case." (Civ. A. No. 18-4671 Compl. ECF No. 2 at 6.) She asks the case to be transferred to the Eastern District of Pennsylvania because of "domestic abuse." (*Id.*) Keyes asserts that "[i]f there is a warrant put out for [her] arrest [illegible] Jeffrey Groder is responsible." (*Id.* at 7.) She also suggests that the Chief Judge of this Court might be responsible because she spoke to Clerk's Office staff

---

[3] The Court adopts the pagination assigned to Keyes' filings by the CM-ECF docketing system.

5

in this district but was informed that she "cannot do a transfer without NYC filing a motion" and that "due to the color of [her] skin [she] [has] been refused to be heard in the State of Philadelphia." (*Id.*) Keyes also filed an "emergency" motion for an attorney to represent her in her state criminal case and for the Eastern District of Pennsylvania to accept her criminal case.

In her third lawsuit, *Keyes v. U.S. District Court Eastern District of Pennsylvania*, Civ. A. No. 18-4672, Keyes named as Defendants the U.S. District Court for the Eastern District of Pennsylvania, Donald Trump, Judge Harris, Judge Juan Sánchez, and Jeffrey Groder. Keyes alleged that President Trump "went against the 13[th] Amendment" apparently by committing "violence against [her] for being black and a Christian." (Civ. A. No. 18-4672 Compl. ECF No. 2 at 5.) She claims that President Trump tried to run her over, jailed her uncle, tried to have her arrested, and is involved in "gangs such as Mafia, Ku Klux Klan which and who are called illuminati." (*Id.* at 6.) Keyes also contends that President Trump hates her because she is black and caused her to be homeless, and that Groder has not helped her. It is not clear why she included Chief Judge Sánchez or this Court as Defendants. That case was unassigned at the time of this opinion.

### 2. Keyes Files Four Lawsuits on October 31, 2018

The next day, rather than appearing for her court date in Nassau County, Keyes returned to this Court and filed four more lawsuits. The first, *Keyes v. Nassau County Police Headquarters and Warrant Squad*, Civ. A. No. 18-4692, names as Defendants the "Nassau County Police Headquarters and Warrant Squad," the "Philadelphia PA Police," and "PA Nassau County District." Keyes alleges that Groder (who is not named as a Defendant) is responsible for a warrant issuing against her in her Nassau County case. She asks "that the warrant be vacated" and the case be transferred to this Court because Wilson and an individual identified as

Ousmane allegedly abused her. (Civ. A. No. 18-4692 Compl., ECF No. 2 at 6.) Keyes adds that if she is "considered dead by the NYC state and Nassau County State [then] the court case does not and should not exist." (*Id.*) Keyes also claims to be a victim of "racial abuse," apparently because "white people," Donald Trump and others "want [her] to [do] time in jail for no reason but violating the law." (*Id.*) Along with her Complaint, Keyes filed an "emergency" motion asking this Court to accept a transfer of her Nassau County case and to vacate a warrant issued against her by Judge Harris, presumably as a result of Keyes' failure to appear at her court date.

In her second case, *Keyes v. Sourmane*, Civ. A. No. 18-4693, Keyes names as Defendants Ousman Sourmane, Helen Sourmane, Zeini Tamiyu and a John Doe Defendant. Keyes alleges that Ousman Sourmane married her in 1996 but left her the next day and married another woman (apparently Helen Sourmane). Keyes indicates that, via her lawsuit, she is filing for divorce. She also notes that her alleged former husband committed adultery with over twenty women.

Keyes third case, *Keyes v. Wilson*, Civ. A. No. 18-4694, named as Defendants Stanley William Wilson, Donald Trump, and Judge Darlene Harris. Keyes alleges that Judge Harris issued a warrant; Keyes also references the disorderly conduct case pending in Nassau County. She further alleges that in 2012, Wilson "made an illegal statement that [she] was dead base solely so he can kill [her]." (Civ. A. No. 18-4694 Compl. ECF No. 2 at 6.) Keyes asserts that Wilson and President Trump want to have her killed, jailed, or institutionalized. That case was assigned to the Honorable Gene E.K. Pratter.

In her fourth lawsuit filed on October 31, 2018, *Keyes v. Adams*, Civ. A. No. 18-4699, Keyes named as Defendants Thomas Adams, Judge Harris, District Attorney Warren Truver (also identified as "Attorney Warren Truver"), "District Attorney of Pennsylvania," Attorney Jeffrey Groder, Attorney John Doe, Judge Juan Sánchez, Stanley William Wilson, Ovsmen

7

Sommarie (apparently the same individual as Ousman Sourmane, but spelled differently, perhaps related to Keyes' difficult-to-read handwriting), and President Trump. Civil Action Number 18-4699 again focuses on the fact that a warrant issued for Keyes' arrest, that Groder was not representing her, and that she is the victim of racial abuse. Keyes again indicates that she wants the Eastern District of Pennsylvania to accept her Nassau County criminal case and dismiss the charges. She also filed a motion "on the behalf of the law 13th Amendment, slavery, abolished," which is again about her criminal case in Nassau County. (Civ. A. No. 18-4699 ECF No. 3.) Civil Action Number 18-4699 was unassigned at the time of this opinion.

### 3. Rulings on "Emergency" Motions

Because Keyes labeled several of her motions as "emergency" motions, and as the undersigned was not available, the Honorable Gerald A. McHugh addressed Keyes' emergency filings in Civil Action Numbers 18-4670, 18-4671 and 18-4692. In orders dated October 31, 2018, which were entered on the docket on November 1, 2018, Judge McHugh found Keyes' initial Motions to Proceed *In Forma Pauperis* in Civil Action Numbers 18-4670 and 18-4671 insufficient because she did not provide any financial information whatsoever or otherwise explain how she supported herself. Accordingly, Judge McHugh denied those Motions without prejudice to Keyes returning with complete motions. He also denied without prejudice Keyes' emergency motions for an attorney in those cases.

In an Order dated and entered on the docket on November 1, 2018, Judge McHugh, in his capacity as emergency judge, granted Keyes' Motion to Proceed *In Forma Pauperis* in Civil Action Number 18-4692 in light of Keyes' inclusion in that Motion a representation that she is currently homeless. Judge McHugh also denied Keyes' emergency motion for a transfer of her

8

criminal case to this Court on the basis that this Court lacks authority to grant that relief. In the meantime, Keyes had filed two additional motions, which remain unaddressed.

### 4. Keyes Files Three More Lawsuits on November 1, 2018

Keyes returned to the Court on November 1, 2018 and filed three additional lawsuits. In her first lawsuit, *Keyes v. Nassau County District Court*, Civ. A. No. 18-4709, Keyes named as Defendants the Nassau County District Court, Judge Darlene Harris, Legal Aid Society (which appears to have provided Keyes counsel in her criminal cases), and the Nassau County Police Headquarters. The Complaint in Civil Action Number 18-4709 again concerns the bench warrant issued against her on October 31, 2018, and Keyes' dissatisfaction with the state court's and counsel's handling of her criminal matter in Nassau County. Keyes again contends that she has been abused, suggests that she may be dead, claims she has been subject to racial abuse, and asks to see an emergency judge to vacate her bench warrant and accept jurisdiction over her criminal matter. Keyes filed another "emergency" motion seeking vacatur of the warrant.

In her second lawsuit, *Keyes v. U.S. District Court Eastern District of Pennsylvania*, Civ. A. No. 18-4710, Keyes named as Defendants the U.S. District Court for the Eastern District of Pennsylvania and Judge McHugh. Keyes' alleges that Judge McHugh strayed from the law "due to the color of [her] skin" by refusing to vacate the warrant issued against her in connection with his rulings on her Motions in Civil Acton Numbers 18-4670, 18-4671, and 18-4692. (Civ. A. No. 18-4710, Compl. ECF No. 2 at 6.) That case was unassigned at the time of this opinion.

Keyes' third lawsuit, *Keyes v. New York City Judges*, Civ. A. No. 18-4714, names as Defendants "New York City Judges," "New York State Judges," "New York State of New Jersey Judges," "New York City and State Lawyers," Tammy Sapricone, Tammy Robins, Jeffrey Groder, and Judge Harris. Keyes claims that judges and lawyers have "strayed from the law" by

"putting the black people in jail." (Civ. A. No. 18-4714 Compl. ECF No. 2 at 5.) Keyes claims to have been "racially abuse[d] since 2012 to now 2018" for various reasons, including being assaulted by Stanley Wilson, President Trump attempting to murder her, and being homeless and hungry. (*Id.* at 6.) She adds that the "Ku Klux Klan [has] been getting away with murders because they are court clerks, court officers, court judges, court lawyers, who are white." (*Id.* at 7.) Keyes filed a motion with her Complaint in which she alleges she has been falsely charged because she is a black woman, but it is not clear what relief she is requesting.

Keyes also filed renewed Motions to Proceed *In Forma Pauperis* in Civil Action Numbers 18-4670 and 18-4671, which state that she cannot afford to prepay the fees to commence this action because she is homeless.

## II. STANDARD OF REVIEW

The Court will grant Keyes leave to proceed *in forma pauperis* in the above cases, because it appears that she is not capable of paying the fees to commence these actions in light of the fact that she is homeless.[4] Accordingly, the Court is required to screen Keyes' Complaints under 28 U.S.C. § 1915(e)(2)(B), which requires the Court to dismiss the Complaints if, among other things, they are frivolous, malicious, or fail to state a claim. A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

---

[4] Keyes' initial motions provided no financial information at all and no explanation at all regarding why she was not able to pay the fees to commence her cases. However, as the Court is now aware that she is homeless, the Court will grant her *in forma pauperis* status for the above cases.

10

"A court that considers whether an action is malicious must, in accordance with the definition of the term 'malicious,' engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant." *Id.* at 1086. In that regard, "a district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. A. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012). Additionally, "[a]s part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory statements and naked assertions will not suffice. *Id.* Moreover, "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). As Keyes is proceeding *pro se*, the Court construes her allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

As noted above, Keyes' Complaints are difficult to read because of her handwriting. In many of her cases, Keyes fails to even mention the majority of the named Defendants in the body of her Complaints, therefore failing to set forth a basis for how they are liable to her. Many of the events she describes appear to have occurred in New York, therefore suggesting that venue

11

for many of her claims and allegations is not proper here. Moreover, several of Keyes' claims are simply factually frivolous. For example, Keyes claims that President Donald Trump tried to run her over on Belmont Avenue and that he wants her to spend time in jail. She also suggests that she might be dead and that if she is, the pending criminal proceedings "should not exist." Such claims are primarily based upon Keyes' paranoid, irrational thoughts and therefore will be dismissed as factually frivolous. Moreover, it is apparent that Keyes has filed several of her cases here because of her desire to avoid the Eastern District of New York's injunction against her. Such behavior is clearly abuse of the judicial process.

Overall, Keyes' Complaints focus on her belief that she has been subjected to racial abuse and discrimination, particularly in her pending state criminal proceedings. She repeatedly requests that the bench warrant issued by Judge Harris be vacated and suggests that Jeffrey Groder is responsible for the issuance of that warrant. She also requests that her pending criminal proceedings be transferred to this Court. Keyes also suggests in some of her cases that she has been subjected to abuse by Stanley Wilson and Ousman Sourmane. The Court addresses these claims below.

### A. Requests to Vacate Bench Warrant and Transfer Criminal Case

In many of her cases, Keyes requests that the bench warrant issued by Judge Harris be vacated and that her pending criminal proceeding in Nassau County, CR-014288-18NA, be transferred to this Court. Keyes appears to suggest that this relief should be granted because she is a victim of "racial abuse."

As Judge McHugh explained to Keyes in the Order entered on November 1, 2018 in Civil Action No. 18-4692, the Court cannot grant the relief Keyes seeks because it may not intervene in her state criminal proceedings. *See Younger v. Harris*, 401 U.S. 37, 43-44 (1971); *Duran v.*

*Weeks*, 399 F. App'x 756, 758–59 (3d Cir. 2010) (per curiam) ("Since Duran's section 1983 action seeking to enjoin his criminal prosecution presents the classic case for *Younger* abstention, the District Court's dismissal of Duran's complaint on that basis was clearly appropriate."). Moreover, if Keyes is trying to remove her state criminal proceedings to this Court pursuant to 28 U.S.C. § 1443, that statutes limits removal "by the defendant to the district court of the United States for the district and division embracing the place wherein [the case] is pending." Therefore, even if Keyes could establish a basis for removing her criminal proceedings to federal court, the United States District Court for the Eastern District of New York would be the proper federal court in which to proceed. *See* 28 U.S.C. § 112(c) (noting that Nassau County is within the Eastern District of New York). Therefore, the Court cannot accept a transfer of her criminal proceedings and cannot vacate the bench warrant pending against her.

### B.    Judicial Immunity

As noted above, Keyes has named Judge Darlene Harris, the judge presiding over her state criminal proceedings, as a Defendant in some of her cases. She seems to suggest that Judge Harris has violated her rights by issuing a bench warrant against her. Judges, however, are entitled to absolute immunity from civil rights claims based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). Here, Keyes' claims against Judge Harris are based on the manner in which Judge Harris has handled her pending criminal proceeding. Accordingly, because Keyes has sued Judge Harris for acts taken in her judicial capacity, judicial immunity clearly applies and there is no legal basis for any of her lawsuits against Judge Harris.

13

### C. Claims Against Jeffrey Groder

As noted above, Jeffrey Groder is an attorney assigned to represent Keyes in her criminal matters. Keyes faults him for being responsible for the bench warrant issued for her arrest. The Court construes Keyes' Complaints to be raising constitutional claims against Groder pursuant to 42 U.S.C. § 1983. Keyes, however, cannot maintain her constitutional claims against Groder because he is not a state actor for purposes of § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.") (footnote omitted); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."). Accordingly, Keyes' claims against Groder are subject to dismissal.

### D. Claims Against Ousman Sourmane and Stanley Wilson

Finally, Keyes repeatedly suggests that she has been abused by Ousman Sourmane and Stanley Wilson. She also alleges that she married Sourmane in 1996 but that he left her the next day and married another woman. Nothing in Keyes' Complaints suggests that the Court has jurisdiction over these claims. Moreover, to the extent Keyes is seeking a divorce from Sourmane, she must seek such relief in the appropriate state court. *See Daniels v. Cynkin*, 597 F. App'x 704, 705 n.3 (3d Cir. 2015) (per curiam) (noting that the domestic relations exception to diversity jurisdiction "encompasses 'cases involving the issuance of a divorce, alimony, or child custody decree'" (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992))). Thus, Keyes' claims regarding Ousman Sourmane and Stanley Wilson will also be dismissed.

### E. Order to Show Cause

As noted above, Keyes filed ten cases in this Court in a three-day period, six of which have been assigned to the undersigned. As discussed above, the Court is dismissing Keyes' Complaints in those six cases at the screening stage after granting her leave to proceed *in forma pauperis*. Keyes' Complaints primarily focus on her underlying criminal case and name many of the same individuals as Defendants.

Keyes has already been enjoined from filing any *in forma pauperis* Complaints in the Eastern District of New York. Her litigation history in this Court also demonstrates that she is not only attempting to avoid that injunction by filing cases here, but that she is again taking advantage of Congress' waiver of the filing fees for those litigants who cannot afford them. Accordingly, the Court will require Keyes to show cause, within thirty days, as to why she should not be enjoined from filing any more civil, *in forma pauperis*, non-*habeas* cases in this Court that concern her underlying criminal case in Nassau County, or that name the Defendants she has already named in Complaints addressed by this Memorandum. *See Abdul-Akbar v. Watson*, 901 F.2d 329, 333 (3d Cir. 1990) ("When a district court is confronted with a pattern of conduct from which it can only conclude that a litigant is intentionally abusing the judicial process and will continue to do so unless restrained, we believe it is entitled to resort to its power of injunction and contempt to protect its process.").

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Keyes leave to proceed *in forma pauperis* and dismiss her Complaints in Civil Action Nos. 18-4670, 18-4671, 18-4692, 18-4693, 18-4709, and 18-4714. Keyes will not be given leave to amend because amendment would be futile. Any pending motions in these cases will be denied. Keyes will be directed to show cause, within

15

thirty days, as to why she should not be enjoined from filing any more civil, *in forma pauperis*, non-*habeas* cases in this Court that concern her underlying criminal case in Nassau County, or that name the Defendants she has already named in Complaints addressed by this Memorandum. An appropriate Order follows.

BY THE COURT:

/s/ Cynthia M. Rufe
CYNTHIA M. RUFE, J.